IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANGELETA HAVELOW, : CIVIL ACTION
    Plaintiff, :
:
  v. :
:
MICHAEL J. ASTRUE, :
Commissioner of the :
Social Security Administration, :
    Defendant. : NO. 08-4275

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                June    30, 2009

       This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied the application of Angeleta Havelow (alternately "Havelow" or "Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 301 *et seq.* (the "Act"). Presently before the Court are Plaintiff's Brief and Statement of Issues in Support of Request for Review (Doc. No. 8) ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff (Doc. No. 11) ("Def. Br."), Plaintiff's Reply Brief (Doc. No. 13) ("Pl. Reply"), and the record of the proceedings before the Administrative Law Judge ("ALJ") and the Appeals Council (hereinafter "R."). Plaintiff asks the Court to vacate the administrative decision and remand the case to the Commissioner for the award of benefits. (Pl. Br. at 24.) The defendant Commissioner seeks the entry of an order affirming the decision of the ALJ that Plaintiff was not disabled. (Def. Br. at 11.) For the reasons set out below, we recommend that the matter be remanded to the Commissioner for further proceedings.

I.        **FACTUAL AND PROCEDURAL HISTORY**

This matter is the second civil action Havelow has brought in this Court relating to a disability benefits application that she filed in 2001.  The current appeal arises from the July 5, 2006 decision of ALJ George Yatron.  In that decision, that ALJ found, as he did in a prior decision, that Plaintiff was not disabled as of the May 4, 1998 disability onset date she alleged in her 2001 application nor as of June 15, 1999, the disability onset date she alleged in a subsequent application that was consolidated for purposes of the hearing in 2006.  We begin by briefly describing the history of the adjudication of her claim that has brought us to this point.

A.        **Plaintiff's application for benefits; the first administrative hearing**

Havelow filed the application that gives rise to this litigation on January 17, 2001.  (R. 120.) At that time she alleged a disability onset date of May 4, 1998.  (R. 120.)  It is uncontested that she met the insured status requirements for entitlements to benefits under the DIB program only through December 31, 1999.  (*See also* R. 128.)  Therefore, in order to be eligible for DIB, Havelow had to establish that her disability began on or before December 31, 1999.  (E.g., R. 18.)[1]

While working in a warehouse as an order filler — which is characterized as work at the "heavy" exertional level (R. 39, 64), Havelow was involved in a work-related accident on May 4, 1998.  She suffered a chest contusion and was later found to have a sternum injury.  (R. 41, 330, 678-80.)  She participated in a work-hardening program but did not return to work because she reported pain in more diffuse locations.  (R. 330.)  She underwent surgery on her left shoulder in 1999 for what, at the time, were characterized as degenerative changes (chronic impingement).  (R. 324.) Following a course of physical therapy, she achieved almost a full range of motion and strength.  (R.

---

[1] One's insured status is not a factor in eligibility for benefits under the SSI program.

324.)  She was also involved in a motor vehicle accident on May 22, 2000, following which she reported neck pain, vertigo, blurry vision, and hearing loss.  In submissions made in support of her application, Havelow asserted that her ability to work was limited by fibromyalgia, carpal tunnel syndrome, chronic asthma, bipolar disorder, and posttraumatic stress disorder.  (R. 132.)  She contended that she was "not able to sit, stand, walk, lift, bend, etc.," that she was "[i]n constant pain," and suffered from "depression, memory problems, breathing difficulties," and "bowel, bladder, [and] joint problems."  (R. 132.)  She was 32 years old as of her alleged disability onset date.  (R. 120.)  After that date, she tried to return to work, including for a few days in January 2000 as a receptionist, but was unable to continue due to her pain.  (R. 155.)[2]

Havelow's claim was denied upon initial review by the state agency.  (R. 74-77.)  At her request, a hearing before an administrative law judge was convened on September 29, 2002.  While represented by counsel, she testified, as did her husband and a vocational expert ("VE").  The ALJ held the record open for the submission of additional medical evidence and took under advisement counsel's request that he order a consultative examination with a psychiatrist or psychologist. Following the hearing, the ALJ made part of the record the additional medical records submitted by counsel but did not refer her for a consultative examination.  In his November 1, 2002 written decision, he concluded, even considering the effects of her impairments in combination, that Havelow was not disabled because she retained the residual functional capacity to undertake work as a receptionist or collection clerk (her past relevant work), as well as other work identified by the VE.  (R. 26-27, Findings 7-8, 12-13.)

---

[2] The ALJ determined that this constituted an unsuccessful work attempt within the meaning of 20 C.F.R. §§ 404.1574(c)(3) and 416.974(c)(3).  (R. 18.)  It did not preclude a finding that she satisfied Step One of the Five-Step Sequential Evaluation Process.

Havelow requested that the Appeals Council review the decision of the ALJ.  (R. 13.)  She submitted additional medical evidence as well as a written argument.  (R. 886-96; 901.)  The Appeals Council, however, affirmed the ALJ's decision.  (R. 9-10; 898-99.)

### B.    Our 2005 Report and Recommendation and Court remand

Havelow then initiated Civil Action No. 04-3935 in our District Court seeking review of the ALJ's decision.  She contended that the ALJ erred in rejecting without adequate explanation the opinions of three treating physicians (her family physician, her rheumatologist, and a pain management specialist); that he erred in failing to credit her testimony and that of her husband without adequate explanation; that his RFC assessment was not supported by substantial evidence; and that he violated his duty to fully develop the record when he denied her request for a consultative psychiatric examination.  (*See, e.g.,* R. 837.)

The matter was assigned to the Honorable Legrome D. Davis.  Upon referral for a Report and Recommendation, we concluded on October 31, 2005 that the ALJ erred by failing to explain whether he credited the testimony of Plaintiff's husband.  We rejected Havelow's remaining assertions of error.  (R. 872.)  In accordance with that finding, we recommended a remand for the ALJ to indicate the extent to which he credited the testimony of Mr. Havelow, if at all, and to "provide some supportive explanation for his credibility assessment."  (R. 872.)

The Commissioner filed objections to the Report and our recommendation of a remand.  (Civ. A. No. 04-3935, Doc. No. 16.)  Plaintiff also filed objections to the portions of the Report that concluded that her other issues did not warrant a remand.[3]  (Civ. A. No. 04-3935, Doc. No. 17.)  Our

---

[3] In her reply brief in the current action, Plaintiff responds to a perceived waiver argument posited by Defendant, speculating that Defendant may mistakenly have regarded "Plaintiff's failure
(continued...)

recommendation of a remand for the reasons set out in the Report was approved and adopted by

Judge Davis in his Order of November 21, 2005.  (Civ. A. No. 04-3935, Doc. No. 19; R. 874.)

### C.    New application

Following the Appeals Council denial of her claim, and shortly before commencing Civil

Action No. 04-3935, Havelow filed another application for benefits, this time pertaining only to the

SSI program.[4]  (R. 940-43.)  As part of that application, which she initiated on August 13, 2004, she

asserted a disability onset date of June 15, 1999 and attributed her disability to "constant pain" cause

by fibromyalgia, carpal tunnel syndrome, asthma, and bipolar disorder.  That claim was denied based

upon the state agency's determination that she could perform her past work as a bank customer

service representative.  (R. 926-31.)  Havelow requested a hearing.  (R. 979.)

### D.    Proceedings on remand; the decision under review

Following the federal court remand involving her original application, the claim was again

assigned to ALJ Yatron.  The file was then consolidated with the second application.  The ALJ

convened another hearing on May 31, 2006, at which time Plaintiff and another VE testified.

Plaintiff was again represented by counsel.  In addition to the file from the earlier application, the

record at the 2006 hearing included records obtained in relation to the second application, including

updated notes from treating physicians and other health care providers (R. 985-1033, 1056-66) as

---

[3](...continued)
to object to the previous R&R as resulting in waiver," and addressing the reasons why it was not
appropriate for her to have objected to the earlier R&R.  (Pl. Reply at 2-3.)  In fact, however,
Plaintiff *did* file objections to the portion of the R&R that was not favorable to her.  *See* Civ. A. No.
04-3935, Doc. No. 17.  Therefore, there was no waiver.

[4] Havelow protectively filed her new application on August 13, 2004.  (R. 940.)  She sought
leave to proceed *in forma pauperis* as to her federal civil action on August 19, 2004.  (Civ. A. No.
04-3935, Doc. No. 1.)

5

well as an updated consultative examination (R. 1034-36).

The ALJ issued his unfavorable decision on July 5, 2006, concluding that Plaintiff had not been under a disability at any time through the date of his decision.  (R. 826.)  He found that she had five impairments that were "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c): fibromyalgia, asthma, depression, high blood pressure, and obesity.  (R. 828.)  He found further, however, that these impairments neither individually nor in combination met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 828.)  These findings are not at issue in this appeal.

The ALJ next assessed Havelow's residual functional capacity, and his decision contains an explicit finding in that regard, which he set off from the text of his decision in boldface.  He found her to be capable of lifting and carrying 10 lbs. frequently and 20 lbs. occasionally and of standing, walking, and/or sitting for at least 6 hours in any 8-hour period.  (R. 828, Finding No. 5.)  He found that she otherwise had no limitations in terms of pushing or pulling activities with either her upper or lower extremities and that she had no postural, communicative, visual, or manipulative limitations.  (R. 828-29, Finding No. 5.)  He then found at Step Four of the Five-Step Sequential Evaluation process that she was capable of performing her past work as a customer service representative at a bank based upon VE testimony that the work did not require the performance of work-related activities precluded by her RFC.  (R. 832, Finding No. 6.)  As a result, he found that Havelow had not been under a disability as defined in the Act from May 4, 1998 through the date of his decision.  (R. 833, Finding No. 7.)  *See* 20 C.F.R. §§ 404.1520, 416.920 (outlining Five-Step Sequential Evaluation Process and providing that a finding at Step Four that claimant can do past relevant work will result in a finding that claimant is not disabled).

Plaintiff again sought review by the Appeals Council, submitting brief exceptions and requesting that the matter be remanded to a different ALJ.  (R. 814.)  Nearly two years later, on July 23, 2008, the Appeals Council issued its decision denying review, concluding that the findings and conclusions contained in the hearing decision were supported by substantial evidence and that Plaintiff's written exceptions were not persuasive.[5]  (R. 810-11.)  Plaintiff initiated this new civil action on September 5, 2008.  (Doc. No. 1.)

## II.   STANDARD OF REVIEW

This Court must determine whether substantial evidence supports the Commissioner's final decision.   42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).   Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Rutherford*, 399 F.3d at 552.  The factual findings of the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)); *Rutherford*, 399 F.3d at 552.  The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

---

[5] Plaintiff argued before the Appeals Council that the ALJ failed to provide adequate reasons for the rejection of the testimony of her husband as directed by the prior Remand Order; that he failed to discuss a functional capacity examination given by Plaintiff's chiropractor; and that he failed to discuss Plaintiff's obesity.  (R. 814.)  Only the first of those issues is implicated in the present Request for Review.

## III.   DISCUSSION

Plaintiff asserts that the ALJ erred in four respects in denying her claims in the 2006 adjudication.  First, she contends that he erred by "failing to incorporate certain required findings" regarding limitations due to mental impairments in his assessment of Havelow's RFC and when he posed his hypothetical questions to the VE based on that RFC assessment.  (Pl. Reply at 3; Pl. Br. at 3-5.)  Second, repeating in large part arguments made in her prior civil action, she contends that the ALJ did not provide a legally acceptable explanation for rejecting evidence that was favorable to her, both medical opinion evidence (from four sources) and lay evidence (from Plaintiff, her husband, and three friends who provided written statements).  (Pl. Br. at 6-19; Pl. Reply at 4-9.)  Third, she asserts that the ALJ did not provide a sufficient explanation of his RFC determination because he "fail[ed] to make any logical bridge" between his assessment and the report of a consultative examiner on which he appeared to rely.  (Pl. Br. at 21; Pl. Br. at 19-22.)  Finally, again repeating an argument made in her prior civil action, she contends that the ALJ violated his duty to develop the record when he declined the request of Plaintiff's counsel, made at the conclusion of the 2002 hearing, that she be sent for a psychiatric or psychological consultative examination, as she asserts that there was insufficient evidence in the record to properly evaluate the severity of her mental impairment.  (Pl. Br. at 22-24; Pl. Reply at 10.)

As we discuss below, we find that a remand is required due to the ALJ's failure to acknowledge or resolve favorable opinion evidence provided by a treating physician and a physician's assistant in his practice.  We also identify two other deficiencies in the ALJ's current decision that we recommend be cured on remand so as to avoid a basis for further judicial review: the failure to account for why certain mild limitations in functioning due to Plaintiff's mental

impairments were not incorporated into the hypothetical question posed to the VE and the weighing

of an RFC assessment made by a disability adjudicator as though it were a medical opinion.

**A.     The adequacy of the ALJ's RFC assessment and hypothetical to the VE**

In the decision under review, the ALJ included the following in the section of his opinion

labeled "FINDINGS OF FACT AND CONCLUSIONS OF LAW":

> 5.  After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to lift and
> carry about ten pounds on a frequent basis and about twenty pounds
> on an occasional basis.  She is capable of engaging in prolonged
> standing, walking, and sitting.  She is capable of standing, walking,
> and/or sitting for at least six hours in any eight-hour period.  She has
> an unlimited ability to engage in push/pull type activities (other than
> for the lifting restrictions mentioned) with either upper or lower
> extremities.   She has no postural, communicative, visual, or
> manipulative limitations.

(R. 828-29 (bolded in original).)  This finding was followed by 22 unnumbered paragraphs of text,

and then his next finding, reflecting his determination at Step Four of the Five-Step Sequential

Evaluation Process:

> 6.  The claimant is capable of performing past relevant work as a
> customer representative at a bank.  This work does not require the
> performance of work-related activities precluded by the claimant's
> residual functional capacity (20 CFR 404.1565 and 416.965).

(R. 832 (bolded in original.)  This finding was followed by four paragraphs of supportive text,

including a recounting of the VE testimony given at the 2006 hearing.  (R. 833.)  The decision

accurately relates that, at the hearing, the ALJ posed to the VE a hypothetical question which

assumed the existence of an individual of the claimant's age, education, and past relevant work, who

was limited in his ability to lift more than ten pounds frequently or twenty pounds occasionally, and

who was both unable to work in environments with excessive pollutants and "unable to follow

9

detailed instructions[.]" (R. 833.) *See also* R. 1091 (hearing testimony including ALJ's hypothetical to VE).[6]

The ALJ's RFC determination as set forth in the bolded, numbered finding of his decision did not contain two restrictions that he included in the hypothetical posed to the VE at the hearing: the inability to work in environments with excessive pollutants and the inability to follow detailed instructions.  Plaintiff challenges the completeness of the RFC determination and the hypothetical question posed to the VE on the grounds that they also did not reflect other particular findings that the ALJ had made elsewhere in his decision regarding Plaintiff's limitations from mental impairments.  These particular findings, which the ALJ recited in compliance with the requirements of 20 C.F.R. §§ 404.1520a and 416.920a,[7] are set forth in the penultimate paragraph of the section

---

[6] In response to the hypothetical, the VE testified that Havelow would be able to return to her work as a customer service representative in a bank and would be able to perform past work at a fast food restaurant if it were available at the light exertional level.  (*Id.*)  The VE also testified that Havelow could perform other jobs (other than her past work), such as cashier and food preparation worker.  (*Id.*)

[7] These regulations provide a specific procedure for the evaluation of mental impairments when assessing whether the claimant has a medically determinable mental impairment, whether the impairment is severe, and whether the claimant satisfies the Listings.  *See* 20 C.F.R. §§ 404.1520a(b)(1), (d), (d)(1)-(2); §§ 416.920a(b)(1), (d), (d)(1)-(2).  The procedure, known as the psychiatric review technique ("PRT"), involves a rating of the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *See* 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).  The rating scale for the first three functional categories is a five-point scale: "none," "mild," "moderate," "marked," and "extreme."  The rating scale for the fourth category is "none," "one or two," "three," or "four or more."  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.  A rating of "none" or "mild" in the first three functional areas and "none" in the fourth area will generally result in a finding that the impairment is not severe for purposes of the Step Two determination, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520a(c)(4), (d)(1); §§ 416.920a(c)(4), (d)(1).

Social Security Ruling 96-8p further explains that the PRT findings are "not an RFC
(continued...)

10

following Finding No. 5 (setting forth his RFC assessment of Havelow), which reads in its entirety:

> Based on the claimant's assertions and the evidentiary record, the following findings are made with regard to the claimant's allegations of a severe mental impairment that affects his [sic] ability to work. The claimant's assertions are considered under category 12.04 (Affective Disorders) as evidenced by depressed mood. The claimant's functional limitations as defined under the "B" criteria are evaluated and it is found that the claimant has "mild" restrictions of activities of daily living, "mild" limitations on her ability to maintain social functioning, and "mild" limitations on her ability to maintain her concentration. She has never suffered any episodes of decompensation. The only recent (within the past several years) medical evidence to support the allegation of depression is the diagnosis of bipolar disorder provided by Dr. Santram who conducted a consultative "medical" examination on March 8, 2005. Dr. Santram conducted a medical examination and was not retained to conduct any type of mental examination. However, Dr. Santram did diagnose the claimant with bipolar disorder. But, it must also be noted that after giving that diagnosis, Dr. Santram notes in his summation that, "Mental status is normal." (See Exhibit B-3-F, last sentence of the report). The evidence of record indicates that the claimant is able to perform some activities of daily living including housework, shopping, lawn mowing, and drives her automobile for up to one hour without serious discomfort. It is found that the claimant has only mild difficulties in maintaining social functioning. The evidence of record indicates that the claimant is able to communicate with family and friends. Although separated from her spouse, they appear to get along well and continue to communicate (See Notes of Testimony from first hearing). There was nothing in the claimant's testimony to indicate that she suffers with any type of difficulty concentrating – other than occasional drowsiness due to medications[]. There have been no allegations that the claimant has ever suffered any type of decompensation.

(R. 832.)

---

[7](...continued)
assessment," as Step Four requires "a more detailed assessment." SSR 96-8p (Policy Interpretation section under "RFC and sequential evaluation"). However, our Court of Appeals has commented that "it does not follow that the findings on the PRT [form] play no role in steps four and five, and SSR 96-8p contains no such prohibition." *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

It is well established in this circuit that a "hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments" that are supported by the record and that "'great specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical." *Ramirez v. Barnhart*, 372 F.3d 546, 554-55 (3d Cir. 2004) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), and *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)). Our Court of Appeals addressed this issue most recently and most comprehensively in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004). In that case, the ALJ had attached to her decision, pursuant to the version of 20 C.F.R. § 416.920a then in effect, a Psychiatric Review Technique Form in which she checked off that the claimant "often" experienced "deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere)." *Ramirez*, 372 F.3d at 549.[8] When the ALJ posed her hypothetical question to the VE at the hearing, however, the non-exertional and non-environmental restrictions that she included were that the job had to "provide for occasional breaks, for the individual use of an inhaler or pump. The work should involve simple one to two step tasks. The work should not require the individual during the course of performing the work to travel outside of the workplace. And . . . the work setting should provide reasonable opportunity for the individual to make and receive personal phone

---

[8] The applicable regulation no longer requires an ALJ to complete this separate form but rather to incorporate his or her findings in this regard into the written decision. In addition, the nomenclature has been modified from a scale of "never," "seldom," "often," "frequent" and "constant" to "none," "mild," "moderate," "marked" and "severe." The designation that the claimant "often" experiences deficiencies is considered to correspond to the current designation that she has "moderate" limitations in a particular regard. *See, e.g., Colon v. Barnhart*, 424 F. Supp.2d 805, 811 (E.D. Pa. 2006) (describing change in terminology of 5-point rating system and comparison of ratings).

calls." *Id.*[9]  The Third Circuit was "not satisfied that these limitations take into account the ALJ's own observation (both in her opinion and in the PRT [form]) that Ramirez *often* suffered from deficiencies in concentration, persistence, or pace," concluding that the limitations to simple tasks, the restriction on travel, and the phone privileges "[did] not adequately convey all of Ramirez's limitations," particularly deficiencies in pace. *Id.* at 554.  The court recognized that there could have been "a valid explanation for this omission from the ALJ's hypothetical.  For example, the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though Ramirez 'often' suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota." *Id.* at 555.  Because the record "would seem to suggest otherwise," however, the court was not willing to make that assumption at the expense of the claimant.  *Id.*

In light of *Ramirez*, which Plaintiff invokes in her brief but which the Commissioner does not address,[10] the questions presented by this aspect of Havelow's appeal, then, are: 1) whether, for purposes of the hypothetical, the ALJ was required to convey to the VE those limitations that were found to be only "mild" and, if so, 2) whether the hypothetical question posed to the VE reflecting a restriction from work involving "detailed instructions" *adequately conveyed* the "mild limitations" that the ALJ specifically found that she had with respect to activities of daily living, her ability to maintain social functioning, and her ability to maintain her concentration.

---

[9] The record reflected that the claimant in *Ramirez* suffered from an anxiety-related disorder that was in large part attributable to her need to feel that she was reasonably protective of her children.  A medical expert at her hearing testified that her ability to maintain a full-time job depended primarily on "the proximity to where her children would be." *Ramirez*, 372 F.3d at 555.

[10] The Commissioner's only comment on this issue is that "the ALJ more than accounted for any work-related limitations that were supported by the record by restricting Plaintiff to work that did not involve detailed instructions (Tr. 1091).  Accordingly, this claim is without merit." (Def. Br. at 5.)

Plaintiff concedes that the hypothetical "arguably accounted for the mild limitation in concentration" in light of its restriction to jobs not requiring "detailed instructions." She asserts, however, that "[i]t did not even arguably account for the other two limitations." (Pl. Br. at 5.) She continues: "Especially significant is the limitation of social functioning. The past relevant work as bank customer service representative to which the ALJ found Ms. Havelow able to return involved a great deal of interaction with other people. Tr. 146.[11] The occupation of cashier II which the vocational expert names as suitable in response to the hypothetical question likewise involved a great deal of interaction with others[.]" (Pl. Br. at 5.)

We are aware of the many cases in this district in which Plaintiffs have been granted a remand where the hypothetical to the VE failed to address, either at all or with the requisite specificity, limitations in one of the functional areas (e.g., as to either concentration, persistence or pace; social functioning; or activities of daily living) where the ALJ had, as part of the PRT assessment, specifically found that the claimant either "often" had deficiencies or had "moderate" limitations or restrictions. *See, e.g., Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, *7 (E.D. Pa. May 20, 2008) (Buckwalter, J.) (cataloguing cases). Plaintiff has not, however, identified precedents for remand where the ALJ's PRT findings only reflected "mild" deficiencies, nor are we aware of any such cases decided by our Court of Appeals.[12] We are also cognizant of the fact that

---

[11] This citation is to the portion of a Work History Report completed by Havelow in February 2001 in which she described the requirements of her prior jobs.

[12] *But see Washington v. Astrue*, Civ. A. No. 08-2938 (E.D. Pa. Mar. 31, 2009) (Reed, J.) (remanding case based on *Ramirez*, *inter alia*, where ALJ accepted report indicating mild limitations in social functioning and in concentration, persistence or pace yet did not include non-exertional limitation in hypothetical to VE); *Thompson v. Astrue*, Civ. A. No. 07-3259 (E.D. Pa. July 14, 2008) (O'Neill, J.) (adopting Report and Recommendation of the late Magistrate Judge Scuderi to remand (continued...)

the Third Circuit in *Ramirez* left open the possibility that there could be "a valid explanation" for the omission from a hypothetical of what was in that case a PRT finding of greater limitation than in this case:

> For example, the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though Ramirez "often" suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota.  The record, however, would seem to suggest otherwise.

*Ramirez*, 372 F.3d at 555.

We are prepared to accept that the ALJ's failure to include in his RFC assessment or hypothetical question to the VE a specific reference to "mild limitations" in the three functional areas reflected his determination that those limitations or deficiencies were each "so minimal or negligible" that they would not significantly limit her ability to perform the work and did not warrant further questioning of the VE.  *See Ramirez*, 372 F.3d at 555.  Moreover, to the extent that the Third Circuit in *Ramirez* looked to the record for confirmation of the ALJ's perceived conclusion about the minimal effects of the claimant's mental impairments, we believe that the record here does not suggest that the ALJ ignored evidence of significant vocational limitations concerning Havelow's abilities with regard to social functioning.  *Cf. Ramirez*, 372 F.3d at 555 (concluding that the record "would seem to suggest otherwise," e.g., that the deficiency that Ramirez "often" suffered from *would* impact her ability to meet production quota).  Although Plaintiff asserts that the limitation of social functioning is "[e]specially significant" in light of the particular customer service work that the ALJ found her to be capable of performing, *see, e.g.,* Pl. Br. at 5, Plaintiff does not point to any

---

[12](...continued)
case based on *Ramirez* where mild limitation not included in hypothetical).

record evidence concerning her limitations with regard to social functioning, nor is any apparent to us.[13]  On the contrary, as the ALJ noted in the decision, "the evidence of record indicates that the claimant is able to communicate with family and friends.  Although separated from her spouse, they appear to get along well and continue to communicate (See Notes of Testimony from first hearing)." (R. 832.)  *See also* R. 830 (summarizing Dr. Santram's observations from consultative examination that Havelow "was able to interact . . . and she could answer questions appropriately. . . .  Her ability to communicate was maintained.").

   While the claimant is entitled to have included in the RFC assessment and hypotheticals all of the limitations that are caused by her medically-determinable impairments, there must be support for those limitations in the record.  We do not believe that the ALJ here erred where his RFC assessment and hypothetical to the VE did not include work restrictions (other than from jobs involving "detailed instructions") based upon what were only "mild" limitations in three aspects of functioning.  Nonetheless, in light of our recommendation that this case be remanded on other bases,

---

   [13] The ALJ's decision notes that the state agency reviewing psychologist in April 2005 assessed Havelow as having only mild limitations in all three functional areas.  (R. 831 (describing Exhibit B-5-F).)  He also noted that, while she was reported to have appeared depressed at a physical examination on March 8, 2005, she "has no recent medical record of treatment for any type of mental disorder."  (R. 828.)  Apart from the 2005 assessment of the reviewing state agency psychologist, the only other medical opinion we observed to be contained in the record and addressing functional limitations attributable to depression or any other mental impairment was offered by Dr. Bomalaski on March 6, 2001.  In the form he completed on that date, he answered in the affirmative questions as to whether Havelow "demonstrate[d] difficulties" in activities of daily living, social functioning, and concentration, persistence and pace.  (R. 562-63.)  When asked to describe the difficulties and provide examples, as to social functioning he responded: "[secondary to] pain and resultant [decreased] activity."  (R. 562.)  Other sources in the record which might be expected to reflect limitations with social functioning attributed to a mental impairment do not reflect significant limitations.  *See, e.g.,* R. 977 (January 12, 2005 observation of Social Security district office interviewer that claimant "appeared to be depressed a bit" but that "[s]he was very cooperative and nice enough").

we encourage the ALJ deciding this matter on remand to state more explicitly in his or her decision the extent to which he or she concluded that these functional limitations had vocational consequences such that the hypothetical question posed to the VE may be judged accordingly.

**B.      The sufficiency of the ALJ's explanation for the weight given to medical opinion evidence and lay testimony and submissions**

Plaintiff next asserts that the ALJ did not provide "a legally acceptable explanation for rejecting evidence favorable to Plaintiff's claim," (Pl. Br. at 6), pointing to both "medical opinion evidence" and evidence from "lay witnesses," (Pl. Br. at 14), including herself.  We address each subsection in the order in which Plaintiff presented it.

**1.      Medical opinion evidence**

Plaintiff contends that the ALJ's explanation for the weight given to certain medical opinions is inadequate, ultimately pointing to four sources of medical evidence.  She notes that, in the decision under review, the ALJ did not discuss any opinion evidence favorable to her claim that was already in the record at the time of his first decision, although he did incorporate by reference "the evidentiary facts" of his earlier decision.  Plaintiff then proceeds to discuss evidence in the record from the following sources: John S. Bomalaski, M.D., the treating rheumatologist (Pl. Br. at 8-11); Conrad K. King, Jr., M.D., a pain management specialist that Plaintiff consulted on two occasions (Pl. Br. at 11-12); Mary B. Wirshup, M.D., who appears to be a primary care treating physician (Pl. Br. at 12-13); and H. Keith Weiss, D.O., a subsequent primary care treating physician (Pl. Br. at 14).

As the Commissioner recognized, the arguments Plaintiff raises with respect to Drs. Bomalaski, King, and Wirshup were presented to this Court in the earlier civil action, and Plaintiff's arguments now are nearly a verbatim repetition of the assertions made in that earlier action.  The

Commissioner did not engage in a response to those arguments other than to take the position that they were already raised and rejected by the Court in the prior appeal. (Def. Br. at 6.) In light of our earlier resolution of Plaintiff's identical arguments in this regard (*see* R. 856-62) and the fact that the ALJ has not included any further discussion of the contribution of these doctors to the record yet has incorporated by reference "the evidentiary facts, as outlined in the previous decision" (R. 826), we see no need to repeat again here our previous discussion or otherwise revisit these issues.

The new issue presented by Plaintiff's appeal concerns the ALJ's treatment of the evidence from Dr. Weiss, who treated her subsequent to the 2002 adjudication. Plaintiff contends that the ALJ erred in failing to acknowledge or explain his rejection of opinion evidence of Dr. Weiss and of a physician's assistant employed in the same practice contained in forms that were completed on Havelow's behalf and submitted to the Pennsylvania Department of Public Welfare ("DPW") concerning her capacity for work. (Pl. Br. at 14.) In response, the Commissioner contends that the ALJ's decision did not, as Plaintiff suggested, contradict these opinions and that the opinion of the physician's assistant was not entitled to deference anyway because she is not an acceptable medical source under the regulations. (Def. Br. at 6-7.) In reply, Plaintiff asserts that the Commissioner is improperly seeking to substitute a rationale for the ALJ's conduct, in violation of the *Chenery* doctrine,[14] and that his arguments are "unpersuasive" and "frivolous." (Pl. Reply at 6-7.)

The Third Circuit has long required ALJs to provide "an explanation . . . of the reason why

_____

[14] In *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943), the Court explained that it will measure an administrative agency's action "by what the agency did, not by what it might have done." *Chenery*, 318 U.S. at 93-94. Our Court of Appeals cited to this aspect of *Chenery* in the context of Social Security cases in *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001), in which it determined that the district court erred when it attempted to rectify the ALJ's failure to consider all of the relevant and probative evidence by relying on records found in the district court's own independent analysis, and which were not mentioned by the ALJ. *Id.* at 44 n.7.

probative evidence has been rejected so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981).  In the decision under review, the ALJ referred to the fact that Havelow had been treating with Dr. Weiss since January 2002, noted his diagnoses and a specialist referral he made on her behalf, and reported that his treatment notes did not support Havelow's testimony regarding her constant tiredness and dizziness.  (R. 831.)  The ALJ did not, however, refer to the first piece of evidence to which Plaintiff now refers:  an Employability Re-Assessment Form created by the Pennsylvania DPW.  (R. 1021-22.)   The form gives the medical provider the opportunity to check off that the patient is "permanently disabled" (where the doctor finds "a physical or mental condition which **permanently** precludes any gainful employment" and where the patient is "a candidate for Social Security Disability or SSI"); "temporarily disabled - 12 months or more" (where "the patient remains disabled due to a temporary condition or as a result of an injury or an acute condition and the disability **temporarily** precludes any gainful employment," such that the patient "may be a candidate for Social Security Disability or SSI benefits"); "temporarily disabled less than 12 months" (reflecting a similar definition as "temporarily disabled - 12 months or more" but without the reference to eligibility for Social Security Disability or SSI); or "employable."  (R. 1021 (emphasis in original).) Dr. Weiss checked off "temporarily disabled less than 12 months" and indicated that the temporary disability began on "2/24/03" (which was the day he completed the form) and was expected to last until "8/24/03," which was six months later.  (R. 1021.)  He did not respond to the question, also contained in that section of the form, asking for his opinion as to why Havelow was disabled.  (*See* R. 1021 ("The patient continues to be temporarily disabled because _____.").)  In another section of the form, however, Dr. Weiss did identify a "primary diagnosis" of fibromyalgia and a

"secondary diagnosis" of asthma.  (R. 1021.)

If the DPW form completed by Dr. Weiss is "probative evidence," then the ALJ's silence as to his assessment of it violates *Cotter*.  Defendant suggests that it is no matter that the ALJ did not discuss the form because it is not contrary to his findings, i.e., that Plaintiff has not established work-preclusive limitations lasting for at least a twelve-month period that are due to medically-determinable physical or mental impairments.  (Def. Br. at 6.)  We can speculate as to some of the bases upon which an ALJ might accord this opinion less than controlling weight to the extent it opined that Havelow was "disabled" for some period of time, under some definition that may not be as stringent as that employed by the Social Security Administration.[15]  We recognize, too, that the regulations specifically provide that a medical source opinion that the claimant is "disabled" is not entitled to "any special significance," as it is an opinion on an issue specifically referred to the Commissioner.  20 C.F.R. § 404.1527(e), (e)(1), (e)(3); *id.* § 416.927(e), (e)(1), (e)(3).  Such an opinion is also excepted from the definition of "medical opinions" in the section of the regulations that describes the weight to be given to various sources of medical evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  We cannot accept, however, that this opinion — that Havelow had a condition that precluded gainful employment for some period of time in 2003 — would not have had some probative value.  To be sure, the Commissioner's policy interpretation ruling regarding "medical source opinions on issues reserved to the Commissioner" emphasizes "[t]hat opinions from any medical source about issues reserved to the Commissioner must never be ignored, and that the . . . decision must explain the consideration given to the treating source's opinion(s)."  SSR 96-5p

---

[15] For example, the opinion did not identify any specific functional limitations, even though the form specifically solicited an explanation for why the patient continued to be disabled.  (R. 1021.)

("Purpose" section). Rather, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." *Id.* ("Policy Interpretation" section). "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the record to determine the extent to which the opinion is supported by the record," applying the factors set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d). *Id. See also id.* (subsection on "Opinions on Whether an Individual Is Disabled," providing that "[s]uch opinions . . . must not be disregarded" despite the fact that, "even when offered by a treating source, they can never be entitled to controlling weight or given special significance").

The ALJ's decision does not reflect any consideration of the opinion offered by Dr. Weiss that Havelow was disabled on February 24, 2003 and that he expected that disability to continue for the next six months. Even though Dr. Weiss's opinion as to Havelow's "disability" would not, standing alone, satisfy the criteria for disability under the Act, we believe the regulations, as explained in SSR 96-5p, required an acknowledgment and discussion of the opinion and the weight accorded to it.

Similarly, we can speculate that there might have been an appropriate reason to afford less weight to the opinion expressed by Dr. Weiss's physician assistant that Havelow was "temporarily disabled" on October 13, 2003 and was expected to so remain through April 13, 2004. We accept, as argued by the Commissioner, that her opinion would not constitute a "medical opinion" because the regulations categorize a physician's assistant not as an "acceptable medical source" but as an "other source" of evidence. *See* 20 C.F.R. §§ 404.1513(d) and 416.913(d). As such, information she provides can offer insight into the severity and effect of an impairment on the claimant's

21

functioning, but her information could not establish the existence of a medically determinable impairment nor would her opinion be entitled to controlling weight under 20 C.F.R. §§ 404.1527(d) and 416.927(d).  *Id.*; SSR 06-3p (addressing, *inter alia*, the consideration of "Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims").  *See also Castillo-Barrero v. Barnhart*, Civ. A. No. 02-588, 2004 WL 2203744, *6-*7 (E.D. Pa. Sept. 27, 2004) (affirming ALJ's decision to reject nurse practitioner's opinion of temporary disability expressed on DPW form on grounds, *inter alia*, that she was not "an acceptable medical source whose opinion is entitled to any weight under the Regulations").  Again, however, the problem here is the ALJ's failure to acknowledge this opinion and provide some explanation for how he reconciled it with his ultimate conclusion that Havelow was never disabled.

We conclude that the ALJ's failure to have addressed in any manner the opinion evidence from Dr. Weiss and his physician assistant violates SSR 96-5p and thus constitutes legal error warranting a remand.

### 2.	Evidence from lay witnesses

Plaintiff also contends that the ALJ erred in not accepting the testimony of various lay witnesses — herself, her husband, and three persons who provided written statements — when he provided "unacceptable" explanations for his rejection of their evidence or ignored entirely their contribution to the record.  (Pl. Br. at 14-19.)  The Commissioner contends that the ALJ's credibility determinations as to Plaintiff and her husband are supported by the record and entitled to deference and that a remand is not necessary for the ALJ to evaluate written statements submitted by non-testifying witnesses.  (Def. Br. at 3-5, 7-9.)  We agree.

### a.      Plaintiff's testimony

In his explanation for his RFC assessment of Plaintiff, the ALJ explained that he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  (R. 829.)  He noted Havelow's testimony that she drove herself to the hearing and that she drives everyday; that she sometimes operates a tractor; that she goes shopping and goes to church; that she claimed that she fell frequently, including a fall the previous year that injured her right knee and rendered her unable to walk any distance; that she experienced drowsiness from her medications; that she suffers from headaches that are severe and last several days; that she is unable to look down due to neck pain; that both shoulders constantly pain her; and that pain interferes with her ability to sit for more than a few minutes.  (R. 829.)  He continued:

> When questioned about her conflicting testimony, especially wherein she stated that she drives for an hour, and then later stated that she cannot sit for prolonged periods due to pain, she stated that she can only drive for about forty-five minutes and rarely drives for an hour any more.  But she did admit to driving everyday.

> The claimant's testimony was conflicting and not totally supported by the medical record.  She described her existence as a life [sic] someone living the life of one who is almost an invalid – unable to do anything due to pain.  However, her testimony also indicates an ability to drive an automobile for an hour.  She stated that she is unable to look down because of severe neck pain, but testified that she can drive a lawn tractor to cut her grass.  (This is an activity that obviously requires one to look down).  She testified that she has been unable to perform any type of work related activities since May 8, 1998, when she suffered [sic] work related shoulder injury.  Then she later testified to doing housework, shopping, and driving a tractor. She testified that she is only capable of walking for one minute at a time, but admitted to doing housework and shopping.

> After considering the evidence of record, the undersigned finds that

23

> the claimant's medically determinable impairments could reasonably
> be expected to produce the alleged symptoms, but that the claimant's
> statements concerning the intensity, duration and limiting effects of
> these symptoms are not entirely credible.

(R. 829-30.)  The ALJ then proceeded to discuss medical evidence concerning Plaintiff's physical limitations and non-exertional limitations, such as the report of Deepak Santram, M.D., who conducted consultative examinations of Havelow in 2001 and 2005; records from Dr. Pushkarewiez, who examined her in 2003 for injuries to her right shoulder, arm, and ankle but recommended no specific treatment for the right shoulder at that time; records from Dr. Weiss, whose treatment notes did not corroborate Plaintiff's "testimony of constant tiredness and dizziness"; and records from Lisa Medvetz, M.D., who diagnosed a hernia but who otherwise found Havelow to have a normal neurological examination.  (R. 830-31.)  At the conclusion of the decision, the ALJ also offered the following: "It is also noted that the claimant's testimony September 19, 2002, and her testimony of May 31, 2006, were consistent in that the claimant maintained in both testimonies that she does housework, shops, gets up around 7 A.M. and goes to bed usually around 11 P.M."  (R. 833.)

Plaintiff contends that the ALJ "rejected" her testimony as internally inconsistent and supported that decision with reference to inconsistencies that he "manufactured" by misrepresenting the testimony.  (Pl. Br. at 15.)  Plaintiff contends that the wording of the ALJ's decision implies that she "backed down" when confronted with an apparent inconsistency as to how long she can drive; that the ALJ mischaracterized her testimony that she "had trouble looking down" (R. 1080) as though she were "unable to look down" (R. 829); that her testimony regarding sporadic daily activities was not inconsistent with her claim of disability; and that her testimony as to how long she could walk indicated that she might be able to walk as much as five minutes but that it depended on

the day.  (R. 1086.)  We cannot agree that the ALJ's treatment of Plaintiff's testimony is reversible error.  We recognize that the ALJ may have somewhat slanted the testimony in the instances Plaintiff cites.  For example, with respect to the first example cited by Plaintiff, the question the ALJ posed to Plaintiff was "[h]ow much driving [she did] in terms of distance and frequency," to which she answered: "On a good day I might get an hour's worth of driving in."  (R. 1071.)  When her attorney brought up this testimony later in the hearing, she agreed with his suggestion that it had "been a while" since she had last driven an hour, although she admittedly had driven about 45 minutes that day to arrive at the hearing.  (R. 1087.)  The point of the ALJ's recitation of this subject of testimony, however, was to point to the incongruity of her driving every day, and occasionally for periods as long as 45 minutes, when she is subject to experience pain in her back and elsewhere, as well as problems gripping items.  Similarly, there is an inescapable incongruity with Havelow's testimony that "when I look, try to put my chin to my chest, I can't do that" and her testimony that she operates a tractor.  These are fair sources for the ALJ to consider when assessing whether Havelow's statements concerning the intensity, duration, and limiting effects of pain were entirely credible.  We recognize, as Plaintiff reminds us, that the fact that she testified that she was able to perform certain activities does not equate with an ability to perform substantial gainful activity.  (*See* Pl. Br. at 15 (citing cases).)  However, the fact that she is able to engage in those activities fairly suggests that her pain, even if sometimes variable in its intensity,[16] does not prevent her from accomplishing basic activities.

---

[16] *See, e.g.,* R. 1084 ("Well, there's never a time I don't have pain in any part of my body, just some days are worse than others, and sometimes I'm in so much pain, I have to either lay or sit to try to find a comfortable position . . . and sometimes, you know, that could be hours.  Sometimes that could be days, you know.  It varies, but there's never a time when I'm not in pain.  There's never a time it doesn't hurt.").

25

We recognize both that the ALJ's credibility determination is entitled to deference as a finding of fact but also that the rationale for that determination must be set forth to ensure that the factual finding is, indeed, supported by substantial evidence.[17]  We conclude that the ALJ has satisfied his duty to explain the basis for his finding and that his finding withstands substantial evidence review.  We find no basis to remand on this ground.

### b.    Testimony of Mr. Havelow

As required by the remand in the prior civil action, the ALJ's decision addressed the testimony offered by Plaintiff's husband at the first hearing.[18]  Near the end of the ALJ's decision, after announcing his conclusion that Plaintiff could return to her past work and describing the VE testimony, the ALJ included the following:

> It is noted that the claimant's husband testified at the first hearing of September 19, 2002.  He testified that he had been married to the claimant for about four years, but he also stated that they had been separated for ten months at the time of the hearing.  Mr. Havelow had a tendency to answer questions posed to him by the attorney for the claimant before the attorney was finished asking the questions.  For examples of this, see the Notes of Testimony, hearing of 9-19-02, page 33.  I gave little weight to Mr. Havelow's testimony because it was primarily cumulative, supported the claimant's testimony, and seemed to be well rehearsed testimony – even to the point of answering questions before they were completed.

(R. 833.)   Plaintiff contends that the first two reasons, which are essentially the same, are

_____

[17] We note also that the ALJ did not base his credibility assessment solely upon the cited inconsistencies in Havelow's testimony and statements but also the fact that her testimony was "not totally supported by the medical record."  (R. 829.)  As the ALJ pointed out, the record did not corroborate Plaintiff's claim that she suffered injuries in a slip and fall in the year before the hearing (R. 830) or was constantly tired and dizzy (R. 831).  Plaintiff's request for review does not challenge this basis for the credibility finding.

[18] Mr. Havelow was not called again at the 2006 hearing.

unacceptable, as "[t]he extent to which testimony is corroborated by other evidence is always relevant to its credibility." (Pl. Br. at 17, citing *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 122 (3d Cir. 2000).) She also challenges whether it was proper for the ALJ to conclude that the witness was not credible simply because he had been prepared by a lawyer.  (Pl. Br. at 18.)

In *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000), the ALJ had explained that he rejected the claimant's testimony regarding the extent of her pain because he determined that it was not supported by the objective medical evidence.  The ALJ did not, however, address other lay testimony that the Commissioner had characterized as "add[ing] nothing more than stating [that the claimant's] testimony was truthful." *Id.* at 122.  The Third Circuit found that argument to lack merit "because the ALJ made a credibility determination regarding [the claimant], and these witnesses were there to bolster her credibility." *Id.*  The ALJ was instructed on remand to "address the testimony of" the other witnesses. *Id.*  In so doing, the court cited to its prior decision in *Van Horn v. Schweiker*, 717 F.2d 871 (3d Cir. 1983), in which the court similarly ordered a remand of a case in which "the ALJ never specifically stated that he did not find the[] testimony [of the claimant and two lay witnesses] credible," and in light of the fact that the court "would expect him at least to state that he found a witness not credible before wholly disregarding his testimony." *Van Horn*, 717 F.2d at 873.

The basis for the prior remand of this case as a result of the earlier federal court action was the failure of the ALJ in his first decision to have made any reference to Mr. Havelow's testimony.  The Court directed the ALJ on remand to "state the extent (if at all) to which he credited the testimony of Mr. Havelow and offer some reason in support of his assessment." (R. 867.  *See also* R. 872, 874.)  The ALJ did this in his second decision that is before us.  His assessment that Mr.

27

Havelow's testimony was cumulative and consistent with Plaintiff's testimony is supported by substantial evidence, in that both witnesses testified as to the change in Plaintiff's daily activities in the period after her injury at work. (*See, e.g.,* R. 59B-61.) The fact that Plaintiff offered testimony of her spouse that was consistent with portions of her testimony does not, however, obligate the ALJ to accept in full her assertions that pain regularly prevents her from being able to accomplish basic activities. In addition, the ALJ was permitted to assess Mr. Havelow as less credible, and therefore decline to enhance Plaintiff's credibility, based upon the ALJ's observation that his testimony "seemed to be well rehearsed." (R. 833.)[19] A witness's demeanor, as well as his interest, are fair subjects for the ALJ to consider in assessing credibility. *See, e.g., Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (noting that "we would ordinarily defer to an ALJ's credibility determination because he or she has the ability at a hearing to assess a witness's demeanor"); *Irelan v. Barnhart*, 243 F. Supp.2d 268, 284 (E.D. Pa. 2003) (describing ALJ's role in assessing credibility and deference to be afforded an adequately supported determination regarding the extent to which pain is disabling). We thus conclude that the ALJ's decision to "g[i]ve little weight to Mr. Havelow's testimony" is supported by substantial evidence and is not a basis for remand.

---

[19] While Plaintiff points out that Mr. Havelow was not the only witness to answer questions posed to him before the question was completed, the vocational experts whom Plaintiff identifies as comparable offenders are hardly similarly situated, as their testimony did not follow upon a preparatory session with any of the participants in the hearing and they do not have the same interest in the outcome that Mr. Havelow would have.

### c.      Written statements

Plaintiff also raises an issue as to the ALJ's failure to have addressed three written statements that were contained in the record and were made in September 2002 by three people who knew her.[20] She asserts that "[t]hese statements corroborate Ms. Havelow's testimony, and are inconsistent with the ALJ's conclusions." (Pl. Br. at 19.) She notes that the ALJ "did not explain his rejection of them" but rather "simply ignored them," (*id.*), in violation of what she characterizes as precepts requiring an explanation for the rejection of evidence of lay witnesses. (Pl. Br. at 7.)[21]

Plaintiff cites four authorities in her brief for the proposition that the ALJ must provide specific reasons for discounting the "testimony" of lay witnesses other than the claimant: *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000); *Van Horn v. Schweiker*, 717 F.2d 871 (3d Cir. 1983), which was cited by the *Burnett* court as the basis for its determination on this issue; *Brooks v. Sullivan*, 882 F.2d 1375 (8th Cir. 1989); and *Proper v. Apfel*, 140 F. Supp.2d 478 (W.D. Pa. 2001). (Pl. Br. at 7). In response, the Commissioner pointed out that in *Burnett*, "the court remanded the case for a new hearing, among other reasons, to assess the credibility of a witness who testified at the hearing. In this case, these friends did not testify at the administrative hearing. They

---

[20] A notation on these statements indicates that they were received during the hearing that took place on September 19, 2002. As such, they were already contained in the record at the time of the ALJ's earlier decision. Although the ALJ did not address these statements in the earlier decision either, Plaintiff did not raise their omission as an issue in the prior civil action. *See* Civ. A. No. 04-3935, Doc. No. 10 (Plaintiff's brief in earlier review); R. 17-27 (2002 ALJ decision containing no citations to Exs. 38F, 39F, or 40F).

[21] The written statements were submitted by persons who knew Plaintiff from high school, work, or their church. They reported the author's observations of difficulties Plaintiff experienced as well as, in one case, the author's opinion of Plaintiff's character. None of the statements were notarized or otherwise sworn to. Rather, each was a letter addressed to the attorney who represented Havelow at her administrative hearings and each was dated between September 15 and 17, 2002, in the days leading up to her first hearing. (R. 663-69.)

merely submitted statements echoing Plaintiff's own self-reported complaints." (Def. Br. at 8 (citation omitted).) In her reply, Plaintiff points out that the *Burnett* court remanded for the ALJ to address "the testimony of Burnett's husband, George Burnett, and her neighbor, Earl Sherman" and that the opinion elsewhere refers to the fact that Mr. Burnett "submitted a letter to the ALJ" regarding his wife's condition while the neighbor, Mr. Sherman "testified at the hearing." (Pl. Br. at 8-9 (quoting *Burnett*, 220 F.3d at 117, 122).) She also points to the recent case of *Eskridge v. Astrue*, 569 F. Supp.2d 424 (D. Del. 2008), in which the district court, citing to *Burnett*, ordered a remand because, *inter alia*, the ALJ did not address written statements submitted by a number of family members and friends of the claimant.

We are not prepared to accept a reading of *Burnett* that requires a remand solely to address written statements submitted by non-testifying witnesses. We note that the case on which *Burnett* relied, *Van Horn*, 717 F.2d 871 (3d Cir. 1983), involved a decision that failed to address *testimony* that was given *at the hearing* by the claimant's mother and his Alcoholics Anonymous sponsor. In *Burnett*, apart from a reference earlier in the opinion to the claimant's husband having submitted a written statement and the neighbor testifying, *see Burnett*, 220 F.3d at 117, when the Third Circuit referred to the evidence from these sources and assessed whether the ALJ's failure to address it was something else that should be addressed on remand,[22] it characterized (perhaps imprecisely) the evidence as their "testimony." *See Burnett*, 220 F.3d at 122 (referring to "the testimony of" Burnett's husband, George Burnett, and her neighbor); *id.* (referring to the fact that "these witnesses *were there* to bolster [the claimant's] credibility" (emphasis added)); *id.* (directing the ALJ on

---

[22] The court had already determined that the ALJ's deficient explanation of his Step Three determination required the court to vacate his decision and remand the case for a further discussion of the evidence. *See Burnett*, 220 F.3d at 120.

remand to "address the testimony of George Burnett and Earl Sherman").  "Testimony" is commonly understood, however, to refer to "evidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition."  *Black's Law Dictionary* 1485 (7th ed. 1999).  We cannot accept that the Third Circuit intended to hold to the same standard — in the context of administrative review of an agency decision, or in any context — evidence offered in a written statement by someone whose competence and demeanor is not subject to assessment by the ALJ and testimony offered by a witness who has invested time to come to the hearing, take an oath, and give live testimony before the ALJ.  Apart from the *Eskridge* case that Plaintiff cites from the District of Delaware, we are unaware of any courts that have interpreted *Burnett* this broadly.  Rather, our research confirms that cases are remanded for further discussion consistent with *Burnett* when it is a *live, testifying* witness whose evidence has not been addressed by the ALJ.  *See, e.g., Randall v. Astrue*, Civ. A. No. 06-4431, 2007 WL 4530996, *4-5 (E.D. Pa. Dec. 20, 2007) (Giles, J.); *Kuhn v. Barnhart*, Civ. A. No. 02-6873, 2004 WL 414069, *13 (E.D. Pa. Mar. 3, 2004) (DuBois, J.).  We will not recommend that the ALJ's decision be vacated for its failure to have addressed the written statements to which Plaintiff refers.

### C.   The sufficiency of the ALJ's explanation for his RFC assessment

The third broad area in which Plaintiff asserts error is the ALJ's alleged failure "to explain his assessment of Plaintiff's residual functional capacity." (Pl. Br. at 19.)  She contends that the ALJ appeared to support his RFC assessment with the report of Deepak Santram, M.D., but that the decision "fails to make any logical bridge between Dr. Santram's report and [the ALJ's] RFC findings," (Pl. Br. at 21), specifically with respect to Plaintiff's capacity for walking.  (Pl. Br. at 22.) She also notes that the "report" completed by a "State agency employee" on April 25, 2005, which

31

offered an RFC assessment similar to that ultimately adopted by the ALJ and to which the ALJ stated he accorded "substantial weight" (R. 831), should not have been relied upon, as it was completed by a state agency adjudicator, not a medical consultant, and thus does not constitute "medical opinion evidence." (Pl. Br. at 22.)  In response, Defendant contends that the ALJ's RFC assessment is supported by substantial evidence.  Defendant also contends that Plaintiff's argument concerning the state agency report is "misplaced" because this Court previously resolved this issue in the prior civil action in favor of the Commissioner.  (Def. Br. at 9, citing to R. 868 (R&R in earlier case).)

The Commissioner's rulings require that the ALJ make an RFC assessment "based on *all* of the relevant evidence in the case record[.]" SSR 96-8p ("Policy Interpretation," "Evidence Considered" section).  As to the explanation required in this respect, Ruling 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)[], and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p ("Narrative Discussion Requirements" section) (footnote omitted).  We proceed to consider the evidence specifically cited by the ALJ in the 2006 decision in his discussion supporting his RFC assessment and about which Plaintiff complains.

### 1.      Reliance on the state agency physical RFC assessment

Plaintiff first raises an issue as to the ALJ's reliance upon the state agency report in making the RFC finding contained at pages 828-29 of the Record (Finding No. 5).  While the ensuing explanation in support of his finding continued for several pages of the decision, the discussion most pertinent to the issue raised here by Plaintiff appears in the 18th paragraph of that decision, to which we have added our emphasis:

> When the claimant filed her application,[23] she completed a disability report and identified her treating sources.  A State agency *employee* reviewed all medical records available at the time and notes that the claimant alleges that she suffers with asthma, fibromyalgia, carpal tunnel syndrome, and neck pain.  According to the State agency *employee*, in the report dated April 25, 2005 (Exhibit B-4-F), the claimant's impairments limit her ability to lift and to carry objects weighing twenty pounds or more to an occasional basis and ten pounds or less on a frequent basis.  The claimant is capable of standing and or [sic]walking for at least six hours in any eight hour period.  She is able to sit for prolonged periods of six hours or more in any eight hour period.  She is capable of engaging in push/pull type activities with either upper or lower extremities with the only limitations being those limitations on ability to lift objects.  The claimant has no postural, manipulative, visual, or communicative limitations.  The report also indicates that the claimant has no environmental type limitations.  I accord this assessment by the State Agency *medical consultant* substantial weight, as it is consistent with the preponderance of medical evidence of record.  I do not agree with the State agency report wherein it states that the claimant has no environmental limitations.  The claimant has been diagnosed with asthma.  Giving the claimant the benefit of the doubt because of her asthmatic condition, I would suspect that the claimant may have some type of work area environmental limitations.  For example, she may not be able to work in environments with excessive pollutants (SSR

---

[23] We presume this to be a reference to her second application, which she initiated on August 13, 2004.  (*See* R. 825 (ALJ decision referring to protective filing on this date); R. 940 (Leads/Protective Filing Worksheet indicating "lead established" on this date).)  This presumption is based upon the fact that the exhibit cited by the ALJ in the next sentence of his discussion, Ex. B-4-F, was prepared in conjunction with the adjudication of that second application.

96-6p).

(R. 831 (emphasis added).)  In the course of his discussion of this report, then, the ALJ initially

describes it as having been completed by a "State agency employee."  At the time he announces that

he will "accord this assessment . . . substantial weight," however, he characterizes it as having been

made by "the State Agency medical consultant."  (R. 831.)  He also cites to a Social Security Ruling,

96-6p, that addresses the consideration to be given to findings "by state agency medical and

psychological consultants."

The exhibit to which the ALJ cites is found in the Administrative Record at R. 1037-42.  The

document is entitled "Physical Residual Functional Capacity Assessment" and was completed on

April 25, 2005 by a Bernadette Oliver,[24] whose electronic signature, followed by the code "LEX

804," appears in a box for "adjudicator's signature."  (R. 1041.)  A box on the form between the

"adjudicator's signature" box and the "date" box, entitled "medical consultant's code," is blank.  (R.

1041.)  On a continuation page of the report, Bernadette Oliver again electronically signs the form

on a signature line, followed by a notation "LEX 804 Spec. Code" and the date.  (R. 1042.)[25]  The

Agency's "List of Exhibits" prepared and/or updated in conjunction with the administrative hearing

in this matter includes this exhibit in the category of "medical records" and refers to it as "RFC -

---

[24] Although identified on R. 1041 and R. 1042 as "Oliver Bernadette," her actual signature
on another record, R. 925, confirms that Oliver is her surname.

[25] The form contains checked boxes assessing the degree of various functional limitations but
on the continuation page provides a narrative report explaining the rationale for the various
assessments: e.g., that the overall evidence suggests that the claimant has the ability to care for
herself and maintain her home; that the treatment she has received has been routine and conservative
in nature; that there are gaps in her treatment history; that she has not been prescribed narcotics for
pain; and that she was not observed by field office personnel to have difficulties when she was in
the office.  (R. 1042.)

Residual Functional Capacity Assessment - Physical (completed by DDS physician) dated 4/25/05."

(R. 8C.)  Also characterized as a medical exhibit on the list of exhibits, and also containing the

notation "(completed by DDS physician)" (*see* R. 8C), is a Psychiatric Review Technique form.  (R.

1043-55.)  On that form, however, the electronic signature of "Henry Weeks,"[26] identified as the

"MC/PC" (presumably "medical consultant / psychological consultant"), is followed by the notation

"Ph.D., Psychologist LEX 0249."  (R. 1043.)  The identification of Bernadette Oliver, by contrast,

does not indicate whether she is a licensed physician or has a medical degree of any sort.

Defendant's brief does not shed any light on the status of Bernadette Oliver.  Rather,

Defendant seems to argue that because we rejected a similar argument in the earlier civil action

regarding whether the assessment of someone from the state agency constituted a medical opinion,

we should reject it here.[27]  (Def. Br. at 9.)  In the earlier civil action, we were prepared to accept that

---

[26] Again, the form identifies him as "Weeks Henry," and the ALJ's opinion refers to this person as "Weeks Henry, Ph.D." and "Dr. Henry."  (R. 831, 832.)  We suspect the correct name is "Henry Weeks," and we note that someone by that name is registered with the Commonwealth of Pennsylvania as a licensed psychologist.  *See* Pennsylvania Department of State online license verification service, http://www.licensepa.state.pa.us.

[27] Defendant presents his position in a somewhat flawed manner.  He recognizes that Plaintiff's argument concerns the ALJ's reliance on a state agency RFC assessment, and includes the citation to the portion of the record containing that 2005 assessment, pages 1037-41.  (Def. Br. at 9.)  Defendant continues:

> This precise argument was already rejected by the district court in the prior civil action (Tr. 868-69 [a reference to the R&R]).  Although Plaintiff *argues* that "Pat Casey" is a claims adjudicator and not a medical expert, Dr. Gryczko signed the state agency's disability transmittals and, therefore, attested that he reviewed the evidence and agreed with the assessment (Tr. 868 [a reference to the R&R]).

(Def. Br. at 9 (emphasis added).)  Defendant correctly notes that, in the prior civil action, we were willing to accept the state agency RFC assessment to which the ALJ gave considerable weight in the

(continued...)

35

the co-signature of a medical doctor on a contemporaneous disability determination form reflected that the medical doctor — an acceptable medical source — had reviewed and approved of the RFC assessment of the disability claims adjudicator, who was not otherwise identified as a doctor. (*See* R. 868-69 (portion of R&R accepting Commissioner's argument on this point).)  In this case, the contemporaneous disability determination form was stamped with the date April 29, 2005 and bears the signature (dated April 25, 2005) of Bernadette Oliver in the box for "disability examiner DDS" but was *not* co-signed by a "physician or medical specialist" — that box is empty. (R. 925, at Box 32. *Cf.* R. 752, at Box 32.)  Therefore, we cannot simply dismiss Plaintiff's argument here on the grounds that it has "already [been] rejected by the district court in the prior civil action." (Def. Br. at 9.)  We cannot accept that the ALJ's reliance on Exhibit B-4-F, the state agency disability examiner's RFC assessment, reflects consideration of *medical opinion* evidence.[28]

---

[27](...continued)
2002 decision (*see* R. 175-82) because the state agency's disability determination form was co-signed by a medical doctor (*see* R. 752), whom we assumed would not have signed off on the benefits denial without having reviewed and approved "Pat Casey's" RFC assessment. (*See* R. 868-69 (portion of R&R accepting Commissioner's argument on this point).)  Plaintiff is not here complaining, however, about the ALJ's reliance on the assessment of "Pat Casey," whose RFC assessment was made in 2001 and contained at pages 175-82 of the administrative record but rather of the more recent RFC assessment: the one cited by the ALJ in his decision (*see* R. 831, referring to Exhibit B-4-F) and completed on April 25, 2005. (*See* Pl. Br. at 22.)

[28] We note that the ALJ includes a reference to SSR 96-6p at the end of the paragraph of his decision that discusses the state agency RFC assessment. (*See* R. 831.)  That ruling was issued, in part, "[t]o clarify Social Security Administration policy regarding the consideration of findings of fact *by State agency medical and psychological consultants and other program physicians and psychologists* by adjudicators at the administrative law judge and Appeals Council levels." SSR 96-6p ("Purpose" section) (emphasis added).  The ruling goes on to explain that "State agency medical and psychological consultants are highly qualified *physicians and psychologists* who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p ("Introduction" section, ¶ 3) (emphasis added).  The ruling notes that ALJs are not bound by the findings of these consultants but that ALJs must consider such findings about the nature and severity of the claimant's

(continued...)

We recognize that the Regulations contemplate that the RFC determination at the state agency stage would be made by a medical or psychological consultant.  *See, e.g.,* 20 C.F.R. § 404.1546(a) ("When a State agency makes the disability determination, a State agency medical or psychological consultant(s) . . . is responsible for assessing your residual functional capacity."). However, in the absence of any evidence in the record suggesting that Bernadette Oliver qualifies as such a source, and given the lack of any proffer that she so qualifies, we do not believe it appropriate to assume that her RFC assessment is entitled to the consideration contemplated by SSR 96-6p.  While non-medical opinions may still appropriately be considered as part of the RFC analysis, *see, e.g.,* SSR 96-8p (listing "lay evidence" among the sources of evidence to be considered), it appears that the ALJ weighed Ms. Oliver's opinion as if it came from a medical source.  This undermines the evidentiary support for his RFC finding and contributes to the need for a remand for the ALJ to ensure that too much weight is not inadvertently assessed to this non-medical opinion.

### 2.     Reliance on report of Dr. Santram

The second part of her challenge to the adequacy of the support for and explanation of the ALJ's RFC determination is Plaintiff's contention that there is essentially a disconnect between the report of Deepak Santram, M.D., a consultative examiner, and the ALJ's decision, which purports

---

[28](...continued)
impairments as "opinions of nonexamining physicians and psychologists" and explain in their decision the weight given to the opinions.  SSR 96-6p ("Policy Interpretation" section, ¶ 1).  This policy specifically applies to RFC assessments, but again, the ruling refers to assessments "by a State agency medical or psychological consultant and by other program physicians or psychologists."  SSR 96-6p (final paragraph of "Policy Interpretation" section).  Nothing in the ruling suggests that the opinion or RFC assessment of a *non*-physician or *non*-psychologist should be considered as relevant medical opinion evidence.

to accord his assessment "substantial weight." (R. 830.) In his brief, Defendant does not specifically address the ALJ's treatment of Dr. Santram's report but rather asserts that the ALJ's RFC assessment is supported by substantial evidence (Def. Br. at 9) and that, "[a]s the district court in the prior appeal also found, the ALJ's analysis of the objective medical evidence and the treating/examining physicians' clinical findings, further supported the ALJ's assessment (Tr. 869-60)." (Def. Br. at 10.)[29]

In the course of his discussion following Finding No. 5, which announced his RFC assessment, the ALJ addressed Havelow's statements concerning her condition, announced his conclusion that, "[a]fter considering the evidence of record," he found her statements concerning the intensity, duration and limiting effects of her symptoms to be "not entirely credible," (R. 830), and proceeded with the following discussion:

> Deepak Santram, M.D., examined the claimant on April 12, 2001, and reported that the claimant walked slowly, but otherwise had no difficulty ambulating (Exhibit 34-F, old file).

> Dr. Santram conducted a consultative medical examination on March 8, [2]005, and reported that the claimant made subjective complaints of difficulty walking.  However, he notes in his report that the claimant does not use any type of assistive device.  Ms. Havelow also reported that she suffers with muscle pain throughout her body and that she also suffers with tiredness.  The claimant, who is sixty-three inches tall, weighed 308 pounds at the time of the examination.

> The examination of the claimant's head, ears, nose, throat, lungs, lymphatic system, cardiovascular system, and respiratory system were all normal.  The claimant complained of difficulty walking.  She was unable to walk on her toes, heels, or to perform tandem gait.

---

[29] While Defendant's point that the RFC determination could be supported by substantial evidence even if one piece of evidence cited by the ALJ is not supportive is well-taken, we find it appropriate to subject to closer examination the two assessments from non-treating sources to which the ALJ gave "substantial weight."

However, the report also notes that she does not use any type of assistive device.

Dr. Santram conducted an extensive musculoskeletal examination with detailed results contained in the report.  An examination of the claimant's neurological system revealed that the cranial nerves II through XII are intact.  Sensory examination shows sharp to dull and vibratory sense are normal in the upper and the lower extremities.  DTRs are 2/4 in biceps, triceps, patellar, and Achilles reflexes.

Regarding the claimant's psychiatric and personality evaluation, Dr. Santram reports that the claimant was able to interact, her memory was appropriate, and she could answer questions appropriately.  Her stress level was normal.  Her ability to communicate was maintained.

Dr. Santram diagnosed the claimant with asthma, fibromyalgia, neck pain, and bipolar disorder.  Dr. Santram also points out that the claimant "can get on and off the examination table".  She cannot walk on her heels and toes.  However, Dr. Santram points out that the claimant can engage in fine and dexterous movements and her mental status is normal (Exhibit B-3-F).  I accord this assessment substantial weight, as it is consistent with a preponderance of the objective medical evidence of record now available (SSR 96-2p).

(R. 830.)  Plaintiff complains that the ALJ appears to claim support for his RFC assessment in Dr. Santram's report, yet Dr. Santram did not express any opinion regarding specific abilities or Plaintiff's capacity for standing, sitting, or walking.  She complains that the ALJ does not "explain how Dr. Santram's report supports the finding that Ms. Havelow had no limitation with respect to walking" (Pl. Br. at 22) and that "[h]is assertion that Ms. Havelow did not use any type of assistive device does not justify the conclusion that she can walk for six to eight hours in a work day."  (Pl. Br. at 22.)

We appreciate that Dr. Santram's report does not address the length of time during which he would expect Havelow to be able to walk in a workday, nor did he complete a separate RFC form that might have addressed that subject.  His report does, however, provide further evidence that,

39

notwithstanding her complaints of difficulty walking, she did not use an assistive device, nor did she present with any abnormalities on her neurological examination. While the evidence offered by Dr. Santram was not in a posture to match an RFC assessment, we do not view the ALJ's use of his report in formulating his RFC assessment as legal error.[30]

Plaintiff has argued that the ALJ's RFC finding is not supported by substantial evidence. We note, however, that, to the extent that Plaintiff focuses on her capacity for walking for as long as 6 hours in an 8-hour workday (*see, e.g.,* Pl. Br. at 22), the ALJ ultimately found Havelow disabled based upon his conclusion that she could return to her work as a customer service representative at a bank, which, according to VE testimony given at the 2006 hearing, is characterized as "sedentary" work. (R. 1090.) Nonetheless, based upon our conclusion, *supra,* that the ALJ erred in not considering the 2003 opinions of Dr. Weiss and his physician's assistant that Havelow was disabled for a period of time, this RFC assessment will need to be revisited on remand, particularly insofar as it was based, at least in part, on the state agency RFC assessment that the ALJ erroneously treated as a medical opinion.

### D. The propriety of the ALJ's decision not to order a consultative examination to explore the mental impairment(s)

The final issue raised by Plaintiff in her request for review is her assertion that the ALJ violated his duty to develop a full and fair record when he declined counsel's request to order a

---

[30] We also note that the RFC assessment made by the ALJ in the 2006 adjudication is consistent with that of the 2002 decision, the evidentiary discussion from which he incorporated by reference into his 2006 decision and which we discussed in the earlier civil action. For example, in the 2002 decision, the ALJ cited to Exhibit 32F, which was a questionnaire completed by Dr. Bomalaski, the treating rheumatologist. (R. 23, 24.) In that report, Dr. Bomalaski failed to respond to a question about Havelow's "gait" and "station." He did, however, confirm that she did not use an assistive device and that one was not required for ambulation or weight bearing. He also characterized her motor power as normal and indicated that she had no muscle atrophy. (R. 560-64.)

psychiatric consultative examination on the grounds that there was already sufficient evidence in the record to permit him to determine whether or not she was disabled due to her alleged mental impairment.  (Pl. Br. at 23 (discussing 2002 ALJ decision found at R. 17).)  Plaintiff suggests that the ALJ mischaracterized a statement from Dr. Santram following the 2001 consultative examination (*see* R. 623-26) to suggest that no further mental evaluation was required and that both Drs. Bomalaski and Wirshup "thought that depression was a significant part of the clinical picture."  (Pl. Br. at 24.  *But see id.* (failing to cite to the record with support for proposition as to the opinions of these treating physicians).)

Defendant properly points out that this issue was raised in the prior civil action and was rejected.  (Def. Br. at 10.  *See* R. 870-72 (discussion in prior R&R).)  We see no reason to revisit that issue.  Moreover, we note that Plaintiff did not appear to have renewed her request, in the course of or subsequent to the 2006 hearing, for a mental consultative examination.  Therefore, we will not disturb the ALJ's 2006 decision before us based upon his determination four years earlier that a requested consultative examination was not required.

## IV.   CONCLUSION

We have concluded that the ALJ erred in failing to demonstrate that he considered the opinions offered by Dr. Weiss and his physician's assistant that Havelow was disabled at least for some period of time in 2003.  We also found that the ALJ erred in treating any RFC assessment made by a state agency adjudicator as though it were medical opinion evidence.  These errors undermine the evidentiary support for the RFC assessment that the ALJ reached and upon which he concluded that Havelow could return to past work.  Therefore, the ALJ's decision cannot be affirmed.

Plaintiff urges the Court to vacate the administrative decision and remand the case to the Commissioner not simply for a new hearing but for the award of benefits.  (Pl. Br. at 24.)  She recognizes that this remedy has been held appropriate when the record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  (Pl. Br. at 24 (citing *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).)  She contends that that standard is met in this case based upon "the medical opinion evidence discussed above, Ms. Havelow's testimony, the testimony of her husband, and the written statements from other lay witnesses."  (Pl. Br. at 24.)  Defendant does not respond directly to Plaintiff's assertion that she is entitled to an outright award of benefits.  Rather, Defendant simply asserts that the Commissioner's decision is supported by substantial evidence and, therefore, should be affirmed.  (Def. Br. at 11.)

As the Third Circuit explained in *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984), the case relied upon by Plaintiff, one of the options of a district court upon review of the decision of the Commissioner is to reverse or modify the decision with or without a remand to the Commissioner for a rehearing.  The district court should direct an award of benefits "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny*, 745 F.2d at 221-22.  In such cases, it would be "unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits."  *Id.* at 222.

The court in *Podedworny* determined that a direct award of benefits was appropriate because of "several substantial errors in the administrative record" and the fact that it was doubtful that the

42

Commissioner would be able to produce new probative evidence on the Step Five question as to which she bore the burden of proof. *Id.* at 222. The court recalled the case of *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981), in which the court directed an award of benefits in a case that had already involved two ALJ hearings, two petitions to the Appeals Council, two appeals to district court, and one appeal to the Court of Appeals. The *Podedworny* court noted that the claimant in its case was also before the court on a second appeal after numerous procedural and legal errors by the Commissioner, resulting in a wait of "over five and one-half years to have his claim for Social Security disability insurance benefits properly determined." *Podedworny*, 745 F.2d at 223. As the court concluded that "further administrative proceedings would simply prolong appellant's waiting and delay his ultimate receipt of benefits," reversal was "especially appropriate." *Id.* In a separate concurring opinion, however, Judge Adams cautioned that "[a] reversal, as opposed to a remand, is in order only where a fully developed administrative record demonstrates that the claimant is clearly entitled to benefits, and thus a new administrative hearing would serve no useful purpose," but that "[u]nfortunate delays in rendering proper final determinations of disability, sometimes attributable to the judicial process itself, are not in themselves sufficient to justify . . . an immediate grant of benefits." *Id.* at 223-24 (Adams, J., concurring) (suggesting that a remand would have been appropriate in *Smith* but would have served no useful purpose in *Podedworny* in light of vocational testimony already in the record).

Havelow's request does not address the issue of substantial delay. We are aware of the fact that her application has been pending and subject to various adjudications and reviews for quite some

time; that two hearings have already been held in her case; and that many of the delays in this case[31] do not appear to have been attributable to her. However, we see nothing in the record suggesting any deliberate actions taken by the Commissioner or his employees to hinder the proper adjudication of this case. Moreover, we do not agree that, on this record, there is sufficient evidence to *require* a finding of disability. We believe that the ALJ erred in not recognizing and reconciling the opinions given by Dr. Weiss and the physician's assistant in his practice to DPW in 2003 concerning Havelow's status as "temporarily disabled." However, we cannot ignore that there is substantial evidence that does not support a finding of disability. This case is thus distinguishable from *Podedworny. Cf. Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (directing an award of benefits where all of the physicians agreed that the plaintiff was disabled, leaving no evidentiary questions to be resolved on remand).

We do not believe it would be appropriate under the present circumstances for this Court to weigh the evidence and render a decision as to disability. We are unable to conclude on the record before us that Havelow would have been eligible for benefits had the ALJ considered the opinions offered in the DPW forms as he was required to do or if he appreciated that the RFC assessment of the state agency adjudicator, Bernadette Oliver, was not offered by nor otherwise endorsed by a "medical consultant" as that term is defined in the regulations. Given the fact that the medical evidence in this case is mixed, we recommend a remand for an ALJ to reconsider the evidence in light of the opinion of Dr. Weiss and the physician's assistant and to discuss the weight to which he or she gives that treating source opinion, as well as any weight to the non-medical opinion of Ms.

---

[31] We note, in particular, that it took nearly two years for her to receive a decision from the Appeals Council on her request for review of the 2006 decision following the submission of her statement of exceptions.

Oliver, when determining Havelow's RFC.  *See also Raymer v. Massanari*, No. Civ. A. 97-5762, 2001 WL 1526265, *6-*7 (E.D. Pa. Nov. 28, 2001) (Yohn, J.) (declining to award benefits where open questions remained and despite fact that government "unconscionably delayed" proceedings by, *inter alia*, misplacing file for three years).  We encourage the ALJ propounding any hypothetical questions to the VE on remand to ensure that his or her question incorporates his or her findings with respect to any limitations caused by Plaintiff's mental impairments, or alternatively to explain in the decision why he or she concludes that any established limitations would not further limit Havelow's ability to perform work.

     Our recommendation follows.

## **RECOMMENDATION**

**AND NOW**, this 30th    day of June, 2009, upon consideration of the brief in support of review filed by Plaintiff, Defendant's response thereto, and Plaintiff's reply (Doc. Nos. 8, 11, 13), as well as the administrative record, it is respectfully **RECOMMENDED** that (1) Plaintiff be granted the relief sought to the extent that the matter is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report; and (2) judgment be entered in favor of Plaintiff, reversing the decision of the Commissioner of Social Security that Plaintiff was not disabled. **IT IS FURTHER RECOMMENDED** that on remand, the ALJ be directed to: 1) address the opinions as to temporary disability rendered by Dr. Weiss and the physician's assistant; 2) resolve the status of the state agency adjudicator, Bernadette Oliver, if the ALJ seeks to rely on Ms. Oliver's opinion of Havelow's RFC; and 3) ensure that the testimony offered by the VE in response to a hypothetical reflects the ALJ's findings with respect to any limitations caused by Plaintiff's mental impairments and/or that the ALJ's written decision explains why any established limitations would not further limit Havelow's ability to perform work.

BY THE COURT:


 /s/ David R. Strawbridge_____
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE